1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHANSIO CHAO,

11          Plaintiff,                    No. 2:10-cv-01972 KJN

12      v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
           Defendant.                      ORDER
15   _____/

16          Plaintiff Chansio Chao ("plaintiff"), who is represented by counsel, seeks judicial

17   review of a final decision of the Commissioner of Social Security ("Commissioner" or

18   "defendant") denying plaintiff's applications for Disability Insurance Benefits under Title II of

19   the Social Security Act ("Act") and Supplemental Security Income benefits under Title XVI of

20   the Act.[1]  In his motion for summary judgment, plaintiff contends that the administrative law

21   judge ("ALJ") in this case erred: (1) by failing "to correctly apply the principles of res judicata"

22   given a prior decision denying plaintiff's application for benefits; and (2) by failing to consider

23   and/or rejecting evidence that plaintiff's condition had "further deteriorated" since the prior

24   _____

25        [1] This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented (Dkt. Nos. 9, 19) to
26   proceed before a United States Magistrate Judge.  28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist.
     Local Rule 301.

                                              1

1    unfavorable decision.  (<u>See generally</u> Pl.'s Mot. for Summ. J., Dkt. No. 15.)  Defendant filed an

2    opposition to plaintiff's motion and a cross-motion for summary judgment.  (Def.'s Opp'n &

3    Cross-Motion for Summ. J., Dkt. No. 16.)  Plaintiff did not file a reply memorandum in support

4    of his motion.  For the reasons stated below, the court denies plaintiff's motion for summary

5    judgment and grants the Commissioner's cross-motion for summary judgment.

6    I.    <u>BACKGROUND</u>[2]

7             This case differs from the typical Social Security case because plaintiff previously

8    applied for and was denied social security benefits.  On November 27, 2002, plaintiff filed

9    applications for disability and disability insurance benefits, which were initially denied on March

10   7, 2003, and by ALJ decision dated April 13, 2004 (the "First Decision").  (Admin. Record

11   ("AR") 12, 312-19.)  The ALJ who issued the First Decision determined that plaintiff had

12   "severe" impairments of "back and generalized body pain," as well as the "residual functional

13   capacity to perform at least a full range of light work (i.e., prolonged standing, walking and

14   lifting not more than 10 pounds and occasionally lifting not more than 20 pounds)."  (AR 16-17,

15   314.)  The ALJ also examined evidence of plaintiff's "depression" but concluded that it was

16   "mild," "not severe," and that it imposed no more than "slight limitations" in plaintiff's

17   functioning.  (AR 16-17, 314.)  The First Decision concluded that plaintiff was not disabled and

18   not entitled to benefits.  (AR 315.)

19            On September 21, 2006, plaintiff again filed applications for Supplemental

20   Security Income and Disability Insurance Benefits, both of which alleged a disability onset date

21   of January 1, 2006.  (AR 65-77, 82-84.)  The Social Security Administration denied plaintiff's

22   application initially on May 17, 2007, and upon reconsideration on July 13, 2007.  (AR 2-4.)

23   Plaintiff requested a hearing before an ALJ, and the ALJ conducted the hearing on February 6,

24   _____

25        [2]   Because the parties are familiar with the factual background of this case, including
     plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts
     related to plaintiff's impairments and medical history will be addressed insofar as they are relevant
26   to the issues presented by the parties' respective motions.

2008.  (AR 11- 23, 267-304.)  Plaintiff was represented by counsel at the hearing and testified.  A vocational expert, Ms. Susan L. Creighton-Clavel, also testified at the hearing.  (AR 11, 297-304.)

In a written decision dated April 4, 2008 (the "Second Decision"), the ALJ denied plaintiff's applications for benefits based on a finding that plaintiff was capable of performing past relevant work as a janitor, both as he performed that work previously and as that work is performed in the national economy.[3]  (AR 22.)  The ALJ's decision became the final decision of

---

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

1  the Commissioner when the Appeals Council denied plaintiff's request for review.  (AR 2-4.)

2  Plaintiff subsequently filed this action, which arises from the Second Decision.

3        B.    <u>Summary of the ALJ's Findings</u>

4        The ALJ conducted the required five-step evaluation and concluded that plaintiff

5  was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not

6  engaged in substantial gainful employment since January 1, 2006, the alleged date of disability

7  onset.  (AR 16.)  At step two, the ALJ concluded that "[t]he record contains no new and material

8  evidence pertaining to the period previously adjudicated" and therefore that the First Decision is

9  "final and binding."  (AR 12.)  However, the ALJ also found that, as to the period after the First

10  Decision, "new evidence" dated *after* that Decision supported a finding that plaintiff's "physical

11  condition is not as severe as it was in the past" but that plaintiff's "mental condition is more

12  severe than it was in the past, as he is now limited to unskilled work."  (AR 16.)  The ALJ

13  determined that plaintiff had "severe" impairments of "degenerative disc disease at L5-S1 and

14  multiple level mild spondylosis, mild scoliosis, and a major depressive order, recurrent, with a

15  post traumatic stress disorder."  (AR 16.)

16        At step three, the ALJ determined that plaintiff did not have an impairment or

17  combination of impairments that met or medically equaled one of the impairments listed in the

18  applicable regulations.  (<u>Id.</u> at 17 (citing 20 C.F.R. pt. 404, subpt. P, app.1).)  Prior to reaching

19  step four of the analysis, the ALJ determined plaintiff's residual functional capacity ("RFC") as

20  follows:

21          In the [First Decision], it was found that the claimant was able to perform
        light exertion, and that the claimant did not have a severe mental

22          impairment.  Having considered the additional evidence obtained in
        connection with the current claim, the undersigned finds that new and

23          material evidence exists to conclude that the claimant currently has a lesser
        physical disability and a greater mental disability.  After careful

24          consideration of the entire record, the undersigned finds that the claimant
        has the residual functional capacity to perform the full range of medium

25

26  evaluation process proceeds to step five.  <u>Id.</u>

4

work as defined in 20 CFR 404.1567(c) and 416.967(c).  Medium work includes the ability to stand and/or walk, off and on, for a total of approximately six hours out of an eight-hour workday, and sit intermittently during the remaining time.  It also requires an ability to lift 50 pounds occasionally and 25 pounds frequently and to frequently bend and stoop.  Nonexertionally, the claimant is limited to simple, routine tasks.  These findings are supported by the treating and consultative examining reports.

(AR 18.)

In assessing plaintiff's RFC, the ALJ also addressed plaintiff's testimony and found that plaintiff was not credible to the extent that his testimony concerning the intensity, persistence and limiting effects of his symptoms conflicted with the ALJ's RFC assessment.  (AR 19, 21.)

The ALJ also addressed the medical evidence relating to plaintiff's back impairments and resulting functional limitations.[4]  The ALJ rejected the ultimate conclusions both from the consultative examining physician, Dr. Sanford Selcon,  and from plaintiff's treating physician, Dr. Scarlett Lu.  Dr. Selcon assessed plaintiff as having "no" functional limitations but the ALJ determined Dr. Selcon's conclusion was "not afforded significant weight" given plaintiff's "longitudinal history" of pain and x-rays indicating "some degree" of physical limitations.  (AR 18-19; 194-201.)   Dr. Lu assessed plaintiff as having "chronic back pain both upper & lower [second to] dextroscoliosis and osteoarthritis" and no ability to work (AR 173), but the ALJ determined that "no evidentiary weight can be given to the conclusions reached by Dr. Lu in [her] statement of November 13, 2007," given that the statement was prepared at plaintiff's request for assistance with his disability claim and reflected extreme limitations inconsistent with Dr. Lu's clinical findings.  (AR 20.)

---

[4]  While the ALJ assessed medical evidence regarding plaintiff's mental impairments, i.e., opinions and treatment notes from treating psychiatrist Dr. Paz Pacifico and psychiatric consultative examiner Dr. Bradley Daigle (AR 14, 20), neither party takes issue with the ALJ's conclusions regarding plaintiff's mental condition and the limitations arising therefrom.  Evidence of plaintiff's mental impairments will therefore not be addressed herein.

1    Having assessed plaintiff's RFC, the ALJ found at step four that given plaintiff's

2   limitations, plaintiff "is capable of performing his past relevant work as a janitor." (AR 22.) The

3   ALJ specifically noted that, in the First Decision, "it was found that the claimant was able to

4   perform his past relevant work," and that "the record continues to support" such finding given

5   that such work "does not require the performance of work-related activities precluded by the

6   claimant's residual functional capacity." (AR 22.) Because the ALJ found that plaintiff could

7   perform such work, plaintiff has "not been under a disability" as defined in the Social Security

8   Act. (AR 22.)

9    Because the ALJ determined at step four that plaintiff could perform his past

10   relevant work both "as he performed it" previously and "as performed in the national economy,"

11   the ALJ deemed the vocational expert's testimony "irrelevant" and did not proceed to step five.

12   (AR 22.)

13   II.    STANDARDS OF REVIEW

14    The court reviews the Commissioner's decision to determine whether it is (1) free

15   of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v.

16   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

17   Cir. 2009). This standard of review has been described as "highly deferential." Valentine v.

18   Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means

19   more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

20   reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc.

21   Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

22   1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690. "The ALJ is responsible for

23   determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

24   Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

25   ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

26   Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g);

see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "To determine whether substantial evidence supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion."  Andrews, 53 F.3d at 1039.

The court's review is constrained to the reasons asserted by the ALJ in the ALJ's decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review reasons provided by the district court in support of the ALJ's credibility decision that were not "expressly relied on" by the ALJ during the administrative proceedings).

III.    DISCUSSION

    A.    Cases Involving Prior Final Agency Decisions Of Nondisability

In cases involving a prior final agency decision of nondisability where the claimant subsequently files a new application for benefits, the prior administrative decision triggers a presumption of continuing nondisability.  Chavez v. Bowen, 844 F.2d 691, 693-64 (9th Cir. 1988) (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the "principles of res judicata made binding the first judge's determination").  In order to overcome this presumption of continuing nondisability, the claimant

"must prove 'changed circumstances' indicating a greater disability."  Id. (because defendant

failed to identify "new" information that "had not been presented to the first" ALJ, it was error

for the second ALJ to have "reopened the prior [ALJ's] determinations concerning the claimant's

ability to perform his past relevant work") (quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th

Cir. 1985)); cf. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172-73 (9th Cir. 2008) (where

"[t]he entirety of the medical evaluations presented with respect to the [claimant's] present

application were conducted *after* [claimant's] initial disability determination[,] [t]hese

evaluations *necessarily* presented new and material information not presented to the first ALJ")

(applying Chavez) (emphasis added); Ellis v. Astrue, No. 2:10–cv–01201–LDG–GWF, 2011 WL

5877490 at *5-9 (D. Nev. Sept. 28, 2011) (unpublished) (ALJ did not err in determining that

plaintiff had rebutted the presumption of continuing nondisability and did not err in adopting the

RFC assessment from the prior ALJ's decision, because there was no "new and material

evidence" concerning the claimant's functional limitations and because the ALJ gave clear and

convincing reasons for not relying on the opinion of claimant's treating physician) (citing

Chavez).

       Social Security Acquiescence Ruling 97–4(9), 1997 WL 742758 (Dec. 3, 1997)

("AR 97-4(9)") provides guidance on the Chavez decision:

> In order to rebut the presumption of continuing
> nondisability, a claimant must prove "changed
> circumstances" indicating a greater disability.  In addition,
> the court [in Chavez] indicated that where the claimant
> rebuts the presumption by proving a changed
> circumstance, principles of res judicata require that certain
> findings contained in the final decision by the ALJ on the
> prior claim must be given some res judicata consideration
> in determining whether the claimant is disabled . . . The
> court concluded that where the final decision on the prior
> claim, which found the claimant not disabled, contained
> findings of the claimant's residual functional capacity,
> education, and work experience, [the agency] may not
> make different finding in adjudicating the subsequent
> disability unless there is new and material evidence . . .

Although the presence of additional impairments rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific findings of the prior decision. Chavez, 844 F.2d at 694. Instead, there must be "new and material" evidence relating to each specific finding. See AR 97–4(9).[5]

After a final agency determination of nondisability, where the claimant experiences improvement in the nature of his limitations and pain allegedly suffered, an ALJ may determine that a claimant's condition has improved. See Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985) (where claimant's first application for benefits was denied, the presumption of continuing non-disability applied, and ALJ properly determined that claimant's condition had "improved rather than deteriorated" in the period leading to second application for benefits.) In general, the Commissioner bears the burden of establishing that a claimant has experienced medical "improvement" that would allow him to engage in substantial gainful activity. Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) (to terminate benefits after they were previously awarded, it is defendant's burden to "come forward with evidence of improvement," and such evidence must be reviewed under the "substantial evidence standard").

B.   The ALJ Found That Plaintiff Rebutted The Presumption Of Continuing Non-Disability And That New And Material Evidence Supported Adjusting Plaintiff's RFC

In this case, the ALJ found that plaintiff presented new evidence and sufficiently rebutted the presumption of continuing nondisability arising from the First Decision. (AR 16, 18.) The ALJ described recent evidence of plaintiff's *mental* impairments and concluded that plaintiff indeed suffered from the "severe" impairment of depression, an impairment that was not

---

[5]   Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit." 20 C.F.R. § 404.985(b). They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2); and are accorded deference by reviewing courts. McNabb v. Barnhart, 340 F.3d 943, 944-45 (9th Cir. 2003).

1   deemed "severe" in the First Decision.  (AR 16-18.)  Plaintiff does not take issue with the ALJ's

2   findings regarding the increase in severity of plaintiff's mental impairments since the First

3   Decision.  (Pl.'s Mot. for Summ. J. at 13 n.6.)  Plaintiff also does not challenge the ALJ's

4   determination that plaintiff's mental impairments limit him to "unskilled work."  (AR 16.)

5           The ALJ also addressed evidence of plaintiff's *physical* impairments, and found

6   that "new" evidence of plaintiff's impairments of degenerative disc disease, multiple level mild

7   spondylosis, and mild scoliosis "shows an *increase* in functional capacity," and "establishes that

8   the claimant has a *higher* physical functional capacity than in the past."  (AR 16 (emphasis

9   added).)  Plaintiff challenges the ALJ's finding that plaintiff's physical impairments have

10  improved such that plaintiff is "now capable of performing medium level work," given that the

11  First Decision described plaintiff as limited to "light" work.  (Compare AR 314 (limiting plaintiff

12  to "light" work) with AR 16 (limiting plaintiff to "medium" work).)  Plaintiff argues that the ALJ

13  failed to specify new and material evidence supporting the determination that plaintiff's

14  "physical condition had improved to now permit him to perform work at the 'medium' exertional

15  level, including the ability to lift 50 pounds occasionally and 25 pounds frequently."  (Pl.'s Mot.

16  for Summ. J. at 13 (citing AR 16, 18).)

17          Specifically, plaintiff's arguments are: (1) that plaintiff's back conditions are

18  "degenerative in nature" and thus that plaintiff's back conditions necessarily worsened since the

19  First Decision (Pl.'s Mot. for Summ. J. at 13-14); (2) that the ALJ did not identify evidence

20  showing plaintiff's back condition had "improved" since the First Decision (id.) and that the

21  medical evidence proves that plaintiff's back conditions "had in fact increased in severity" since

22  the First Decision[6] (id. at 14); and (3) that the ALJ's reliance upon "consultative examining

23  specialists" was improper given that the ALJ "specifically disfavored" some of these reports (id.

24  _____

25  [6] Plaintiff also argues that evidence in the form of opinions and notes of plaintiff's treating
    physician, Dr. Lu, and plaintiff's own testimony regarding his symptoms confirm the worsening of
    plaintiff's physical condition since the First Decision.  (Pl.'s Mot. for Summ. J. at 21-22.)  Each
26  argument is addressed below.

at 14-15).  Plaintiff argues generally that, while the ALJ cited "treating source records, x-ray findings and laboratory records, and the findings of the consultative examining specialists" (AR 16) to support her conclusion, this was nonetheless "inadequate to meet the ALJ's burden under Chavez to show that [plaintiff's] physical condition had improved."  (Pl.'s Mot. for Summ. J. at 13.)  For the reasons described below, plaintiff's arguments are not well-taken.

        a.      *Plaintiff Has Not Supported His Argument That Claimants With "Degenerative" Conditions Are Entitled To A Presumption Of Worsening Symptoms*

While plaintiff's back conditions may generally be "degenerative in nature," this does not mean that plaintiff's particular condition has necessarily deteriorated since the First Decision.  Plaintiff cites no authorities supporting the suggestion that "degenerative" conditions give rise to a presumption that a particular claimant's symptoms have *actually* worsened over time.  (Pl.'s Mot. for Summ. J. at 13-14.)  Accordingly, the undersigned rejects the argument.

        b.      *Substantial Evidence Supports The ALJ's Finding That Plaintiff's Back Conditions Improved Since The First Decision*

Here, in concluding that the functional limitations arising from plaintiff's back conditions had improved since the First Decision, the ALJ weighed both the medical evidence and plaintiff's credibility regarding his symptoms.  (AR 15, 18-21.)  As discussed below, the ALJ carefully considered and weighed all the relevant and reliable evidence, and the substantial evidence confirms that plaintiff's functional limitations arising from his physical condition improved since the First Decision.  See Taylor, 765 F.2d at 875; Murray, 722 F.2d at 500.  Further, where evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995) ("If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [ALJ]") (citing cases).

////

11

1.   ***Medical Evidence Supports The ALJ's Determination That The Functional Limitations Arising From Plaintiff's Back Condition Had Improved***

Notably, the ALJ did not simply ignore the First Decision or fail to discuss the new evidence post-dating that decision.  Cf. Chavez, 844 F.2d at 694 (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," it was error to deviate from findings in first decision).  Instead, the ALJ specifically acknowledged the First Decision, described its conclusions, and described AR 97-4(9) and the presumption of continuing nondisability.  (AR 12.)

i.   **The ALJ Described Plaintiff's Record Of Continually "Mild" Back Conditions And Normal Test Results**

In concluding that the functional limitations arising from plaintiff's back conditions had improved, the ALJ specifically compared medical evidence *predating* the First Decision with medical evidence *postdating* that decision, noting continuously "mild" back conditions across plaintiff's longitudinal history.  (AR 15-16, 19-20 (discussing AR 252-53, which reflect a "complete lumbar exam" showing "mild spondylosis and mild scoliosis" in 2002; AR 237, which reflect a "complete cervical exam" showing "mild mid-cervical spondylosis" in 2005; and *also* discussing AR 161-62, which reflect normal ("5/5") extremities exams and "mild" back conditions in 2007).)  The ALJ also explained that while plaintiff's 2007 exams revealed "parathoracic/lumbar rigidity and paracervical rigidity," they also revealed "5/5" ratings for plaintiff's lower extremities, and 2007 x-rays revealed "mild dextroscoliosis and osteoarthritic changes involving the lumbar spine incidentally."  (AR 15, 20, 161.)  The ALJ also noted that exam records dated July 2007 showed that plaintiff's lower extremities exams were normal ("5/5").  (AR 15, 164.)

The ALJ explained that examining physician Dr. Selcon gave plaintiff an internal medicine evaluation in January 2007 wherein plaintiff "reported chronic low back and neck pain . . . ."  (AR 15, 197-201.)  Dr. Selcon found, however, that while plaintiff had "mental health

1    issues, hypertension, and hemorrhoids," plaintiff's "gait was within normal limits," and that

2    plaintiff had "no" functional limitations.  (AR 15, 197-201.)  Dr. Selcon made no mention of

3    back impairments.[7]  (AR 197-201.)  Dr. Selcon's examination of plaintiff also revealed plaintiff's

4    lack of tenderness with palpitation of his back, range of motion "within normal limits," no pain

5    complaints with straight leg raising, normal range of motion for all four extremities, normal

6    muscle strength, intact sensation, and normal reflexes. (AR 15, 197-201.)

7            The ALJ's lengthy discussion of the medical evidence dated before and after the

8    First Decision reveals continual diagnoses of "mild" back conditions, and, aside from a few

9    exams reflecting some "rigidity" in plaintiff's back, exam results and x-rays within normal limits

10   as described above.  This evidence confirms that, notwithstanding plaintiff's so-called

11   "degenerative" back impairments, at the very least plaintiff's physical condition had not

12   worsened in the period since the First Decision.  However, before ultimately concluding that the

13   functional limitations arising from plaintiff's physical condition had actually improved since the

14   First Decision, the ALJ went on to discount plaintiff's treating physician's opinion *and* to

15   discount plaintiff's credibility regarding his symptoms.

16           ii.    **The ALJ's Discounting Of Dr. Lu's Opinion Supports The Finding**
                    **That Plaintiff's Back Condition Improved**

17

18           Plaintiff argues that the ALJ improperly discounted Dr. Lu's opinion.  (Pl.'s Mot.

19   for Summ. J. at 18-20.)  Specifically, plaintiff argues that Dr. Lu's opinion was not prohibitively

20   brief or conclusory, was not based "solely" on plaintiff's subjective complaints, and that the ALJ

21   failed to consider the "overall diagnostic picture" reflected in Dr. Lu's treatment notes.  (Id. at

22   18-20.)  The arguments are not well-taken.

23   ////

24

25           [7] While plaintiff argues that the ALJ improperly relied upon Dr. Selcon's examination given
     the ALJ's rejection of Dr. Selcon's ultimate conclusion that plaintiff had "no" functional limitations,
26   the argument is not well-taken as discussed further below.

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830.  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  Id.  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533 F.3d at 1041 (modification in original) (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  Further, if a treating physician's opinion is brief, conclusory, or inadequately supported by clinical findings, the ALJ need not accept that opinion.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Here, Dr. Lu's opinion of November 13, 2007 provides, in its entirety:

> Please consider Mr. Chao for disability benefits.  For the last 10 years, he states he has attempted to hold a job unsuccessfully secondary to inability to follow instruction. Mr. Chao claims poor memory [that has not been confirmed through tests].  P[atient] Chao has chronic back pain both upper & lower [second to] dextroscoliosis and osteoarthritis. Finally, pt is also seen at one of the psychiatric outpatient clinics for severe depression as a result of the above conditions.

(AR 173.)  The ALJ gave "no evidentiary weight" to Dr. Lu's opinion of November 13, 2007,

finding that:

> [it] was completed at the claimant's request for assistance with his disability claim [and was] conclusory and brief, based on the claimant's recitation of his subjective complaints, and inadequately supported by the clinical findings found during the claimant's November 13, 2007 examination. [Dr. Lu's] minimal findings noted at the time of his evaluations are not consistent with the extreme limitations he assessed, nor are they consistent with the findings in the other evidence of record, as discussed above.

(AR 20.)

The ALJ properly found that Dr. Lu's five-sentence opinion to be conclusory and brief. The ALJ also correctly characterized Dr. Lu's opinion as based largely on plaintiff's subjective statements rather than Dr. Lu's clinical observations.[8] Specifically, Dr. Lu's opinion notes that *plaintiff* "states" that "he has attempted to hold a job unsuccessfully" for the past 10 years, and that *plaintiff* himself "claims" to have a poor memory. (AR 173.) Dr. Lu does not suggest that she has personal knowledge of either representation based on her exams of plaintiff.[9] Parsing Dr. Lu's opinion for conclusions based on Dr. Lu's own knowledge reveals only that Dr. Lu diagnosed plaintiff with "chronic back pain both upper & lower [second to] dextroscoliosis and osteoarthritis." (Id.) Yet Dr. Lu does not clarify whether plaintiff's diagnosed back conditions are more than "mild," and does not suggest any functional limitations resulting

---

[8]   While an ALJ may avoid pitfalls of relying on a less-than-credible plaintiff by "support[ing] his ultimate opinion with his own observations," see Ryan, 528 F.3d at 1199-1200, here Dr. Lu failed to support her "opinion" (AR 173) (i.e., that plaintiff should receive benefits and that plaintiff has been unable to work for 10 years) with her *own* observations.

[9]   Because the ALJ properly discounted plaintiff's credibility, as described below, the ALJ could properly reject Dr. Lu's opinion based largely on plaintiff's self-reports. See Bray, 554 F.3d at 1228 (rejecting claimant's assertion that the ALJ could not discount a treating doctor's work restrictions that he drafted at the claimant's request because a doctor allegedly would not prescribe unwarranted restrictions; finding, instead, that the "prescribed work restrictions were based on [the claimant's] subjective characterization of her symptoms" that the ALJ properly determined were not entirely credible); Tommasetti, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible").

therefrom.  Instead, Dr. Lu simply urges that plaintiff be "consider[ed]" for disability benefits.  (Id.)  Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Lu's opinion was conclusory and brief, as well as unsupported by Dr. Lu's treatment notes.

Aside from noting the brief and conclusory nature of Dr. Lu's opinion, the ALJ *also* offered specific, legitimate reasons for discounting Dr. Lu's opinions in light of conflicting medical evidence.  See Lester, 81 F.3d at 830; Valentine, 574 F.3d at 692; Tommasetti, 533 F.3d at 1041.  Specifically, the ALJ noted Dr. Lu's "minimal" clinical findings and their tendency to conflict with Dr. Lu's assessment of plaintiff's "extreme" limitation, as well as with other physicians' medical findings with respect to plaintiff.  (AR 20)  As the ALJ accurately explains, the Dr. Lu's treatment notes from the same day Dr. Lu penned her opinion reflect only "mild" back conditions and some "rigidity" in plaintiff's back, and they also reveal normal ("5/5") extremity exams and plaintiff's continued treatment with Flexeril medication.[10]  (AR 160.)  Further, treatment notes arising from Dr. Lu's exams predating her opinion again reflect only "mild" diagnoses and some "rigidity" in plaintiff's back.[11]  (AR 161-62, 164.)

Finally, other medical evidence in the record, also conflicts with Dr. Lu's urging that plaintiff be "consider[ed]" for disability benefits, such as Dr. Selcon's findings.[12]  (AR 18-19, 197-201, AR 252-53, 273 (x-rays and clinical exams by other physicians denoting "normal"

---

[10]  Plaintiff argues that the ALJ failed to consider Dr. Lu's findings of "rigidity" (Pl.'s Mot. for Summ. J. at 19-20 (citing AR 160, 162)), but the ALJ specifically noted "rigidity" (AR 19 (citing AR 161-62)).  It cannot be said that the ALJ "ignored" the overall diagnostic picture with respect to Dr. Lu's treatment notes.  (Pl.'s Mot. for Summ. J. at 20.)

[11]  Plaintiff argues that the ALJ failed to consider Dr. Lu's treatment notes predating her November 13, 2007 opinion and focused solely on the notes from the same day as Dr. Lu's letter.  (Pl.'s Mot. for Summ. J. at 19-20.)  However, a review of Dr. Lu's other treatment notes does not suggest the ALJ erred in rejecting Dr. Lu's opinion.  For instance, remarkably, in one treatment note Dr. Lu notes that plaintiff's "ability to function at work [is] not a result of physical condition as much as mental condition."  (AR 164.)  The remaining notes reflect some back "rigidity" but nonetheless diagnoses of only "mild" back conditions.  (AR 161-62, 164.)

[12]  "[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"  Orn, 495 F.3d at 632-33 (internal citations omitted).

16

1   test results and/or "mild" back conditions).)  Accordingly, the ALJ properly determined that Dr.

2   Lu's "extreme" opinion that plaintiff is entitled to benefits is neither consistent with Dr. Lu's

3   own notes nor consistent with the other medical evidence in the record.

4         The ALJ noted the brief and conclusory nature of Dr. Lu's opinion, explained how

5   Dr. Lu's "extreme" opinion was inadequately supported by Dr. Lu's clinical findings (which

6   reflected only "mild" diagnoses and rigidity) and highlighted inconsistencies between Dr. Lu's

7   opinion and the findings of other physicians, such as Dr. Selcon.  See Thomas, 278 F.3d at 957

8   (ALJ need not accept brief and conclusory findings); Tommasetti, 533 F.3d at 1041 (ALJ meets

9   burden by "setting out a detailed and thorough summary of the facts and conflicting clinical

10  evidence," interpreting that evidence, and making findings).  The ALJ did not err in giving Dr.

11  Lu's opinion "no evidentiary weight," and the ALJ's reasons for discounting the opinion are

12  supported by substantial evidence in the record.  (AR 20.)

13
14       iii.    **The ALJ Properly Relied On Portions Of Medical Reports In Determining That Plaintiff's Functional Capacity Improved**

15        The ALJ rejected Dr. Selcon's ultimate opinion that plaintiff had no severe

16  physical impairments and "no" physical functional limitations (AR 197-201), but the ALJ

17  nonetheless invoked Dr. Selcon's findings arising from his clinical examination of plaintiff.  (AR

18  18-19.)  Dr. Selcon's examination revealed plaintiff's normal gait, no tenderness with palpation

19  of his back, range of motion "within normal limits," no pain complaints with straight leg raising,

20  normal range of motion for all four extremities, normal muscle strength, intact sensation and

21  normal reflexes.  (AR 197-201.)  Also, while the ALJ declined to adopt Dr. Selcon's conclusion

22  that plaintiff had "no" physical limitations, the ALJ weighed that conclusion as part of her

23  determination that plaintiff was limited to "medium" work rather than "light" work.  (AR 16, 18-

24  19, 21, 197-201.)

25  ////

26  ////

17

Plaintiff argues that the ALJ improperly asserted her own "medical expertise" in assessing plaintiff's RFC.  (Pl.'s Mot. for Summ. J. at 20-21.)  Plaintiff challenges the ALJ's reliance on Dr. Selcon's examination given the ALJ's rejection of Dr. Selcon's *ultimate opinion* regarding plaintiff's functional limitations.  Plaintiff argues that the ALJ rejected "every piece of opinion evidence within the record regarding Mr. Chao's physical limitations," such that there is "no support within the record for" the ALJ's functional findings.  (Pl.'s Mot. for Summ. J. at 20 (citing AR 18 (giving "not significant" weight to Dr. Selcon's opinion that plaintiff has "no" physical limitations), AR 21 (giving "little weight" to "assessments of non-examining physicians" to the extent they "differ from the undersigned's ultimate conclusion").)  Plaintiff argues that, because the ALJ "specifically disfavored" Dr. Selcon's report, the ALJ necessarily "assumed" that plaintiff's condition had improved "based on [the ALJ's] bare reading of the treatment records."  (Pl.'s Mot. for Summ. J. at 15 (citing Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006).)  Plaintiff argues that the ALJ improperly determined plaintiff's functional limitations based on the ALJ's "own reading of the medical evidence."  (Pl.'s Mot. for Summ. J. at 20-21.)  Plaintiff's arguments are not well-taken.

When weighing evidence from a medical doctor, the ALJ need not necessarily agree with everything contained in such evidence, and can consider some portions less significant than others when evaluated against the other evidence of record.  See Magallanes, 881 F.2d at 753 ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'").  The ALJ is "entitled to draw inferences 'logically flowing from the evidence.'"  Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)).  Accordingly, the undersigned rejects plaintiff's argument that the ALJ erred in partially relying upon Dr. Selcon's report and on findings by "consultative examining specialists."  While the ALJ did not ultimately adopt Dr. Selcon's conclusion that plaintiff had "no" functional limitations, that conclusion — as well as the results of Dr. Selcon's examination of plaintiff — nonetheless constituted evidence

18

1  supporting the determination that plaintiff had greater functional abilities than the "light work"

2  limitation stated within the First Decision.

3          Further, determination of a claimant's RFC is a matter left to the ALJ.  20 C.F.R.

4  §§ 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as . . .

5  your residual functional capacity . . . , the final responsibility for deciding these issues is reserved

6  to the Commissioner"); 404.1546(c) (identifying the ALJ as responsible for determining RFC).

7  "Opinions on some issues," including "residual functional capacity," "are not medical opinions."

8  20 C.F.R. § 404.1527(e), (e)(2).  "It is clear that it is the responsibility of the ALJ, not the

9  claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d

10  1044, 1049 (9th Cir. 2001.)

11         In making an RFC determination, an ALJ cannot go "outside the record to

12  medical textbooks for the purpose of making his own exploration and assessment as to [a]

13  claimant's physical condition," and an ALJ cannot ignore uncontradicted medical opinions.  Day

14  v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975).  However, an ALJ can consider those

15  limitations for which there is support in the record aside from properly-rejected evidence or

16  subjective complaints, including limitations "consistent with" a medical source's findings.  See

17  Batson v. Commissioner of the Soc. Sec. Admin., 359 F.3d 1190, 1197-98 (9th Cir. 2004)

18  (finding that "substantial evidence" supported ALJ's RFC determination that plaintiff "can walk

19  about four blocks at a time, stand for one hour, sit for one hour, occasionally lift 10-20 pounds,

20  and drive for 15 minutes at a time," because these findings were "*consistent with*" — albeit not

21  identical to — examining therapist's determination that plaintiff "can lift 26 pounds occasionally,

22  lift 13 pounds frequently, and complete an 8 hour work day given an opportunity to change

23  positions") (emphasis added); Bayliss v. Barnhart, 427 F.3d 2011, 1217 (9th Cir. 2005)

24  (upholding ALJ's RFC determination because "the ALJ took into account those limitations for

25  which there was record support that did not depend on Bayliss's subjective complaints."); see

26  also Banks, 434 F. Supp. 2d at 805 (where plaintiff argued that the ALJ's RFC assessment was

19

1  not supported by substantial evidence because "[i]t was only the ALJ himself, a layperson in

2  medical matters, who opined that [plaintiff] can tolerate all but heavy concentration of respiratory

3  contamination or pollution," the district court nonetheless found that physician's opinions

4  constituted "substantial evidence" to support the ALJ's RFC determination).[13]  Finally, where

5  "the record contains conflicting medical evidence, the ALJ is charged with determining

6  credibility and resolving the conflict." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003);

7  Batson, 359 F.3d at 1195.

8          Here, the ALJ did not go outside the record or review her own textbooks in

9  rendering her RFC assessment.  See  Day, 522 F.2d at 1156.  As discussed above, the ALJ based

10 her RFC assessment in part on medical evidence from Dr. Selcon, on the repeated findings by

11 various medical providers that plaintiff has "mild" back conditions and normal exam results, on a

12 discrediting of plaintiff's subjective testimony, and on a rejection of Dr. Lu's extreme assessment

13 that plaintiff is totally incapable of working.  (AR 18-21.)  Further, while the ALJ rejected Dr.

14 Selcon's functional capacity assessment, the ALJ's RFC finding was certainly "consistent with"

15 that assessment, as a plaintiff having "no" functional limitations (AR 201) could necessarily

16 perform "medium" work (AR 16).  See Batson, 359 F.3d at 1197-98.  While the ALJ is a

17 "layperson," she was entitled to draw from all the medical evidence in the record, including

18 ─────────────────

19 [13] Plaintiff cites to Banks to argue that the ALJ's RFC determination lacks the support of
   substantial evidence, along with Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993). (Pl.'s Mot. for
   Summ. J. at 20). However, in Banks, the plaintiff argued that the ALJ's RFC assessment was not
20 supported by substantial evidence because "[i]t was only the ALJ himself, a layperson in medical
   matters, who opined that [plaintiff] can tolerate all but heavy concentration of respiratory
21 contamination or pollution," and the district court nonetheless found that a physician's opinions
   constituted "substantial evidence" to support the ALJ's "layperson" RFC determination. See Banks,
22 434 F. Supp. 2d at 805.  Here, the ALJ crafted an RFC assessment based upon specific medical
   evidence in the record, just like the ALJ in Banks, and it is not error for "layperson" ALJs to base
23 RFC determinations on medical evidence in the record.  See id.  In Penny, the court found that the
   ALJ erred by finding plaintiff not to be disabled based on "the sole statement" of a non-examining
24 physician who opined that the plaintiff could do "sedentary work," holding that "[w]ithout a personal
   medical evaluation it is almost impossible to assess the residual functional capacity of any
25 individual." See Penny, 2 F.3d at 958.  Here, however, the ALJ did not draw any conclusions from
   the "sole statement" of a non-examining physician.  See id.  Accordingly, neither Banks nor Penny
26 supports plaintiff's argument that the ALJ improperly supported her RFC finding.

portions of the diametrically opposed functional limitations posited by Drs. Lu and Selcon, in order to resolve conflicts in the medical evidence.  See id. at 1195.  Plaintiff's suggestion that the ALJ had to take the all-or-nothing approach of adopting Dr. Selcon's functional limitation finding (or, alternatively, adopting Dr. Lu's) is not supported by the authorities plaintiff provides.  Accordingly, the ALJ did not err in basing her RFC assessment in part upon the results of Dr. Selcon's examination and report.

2.    ***The ALJ's Determination That Plaintiff Gave Less-Than-Credible Testimony Supports The Finding That Plaintiff's Back Condition Improved***

The ALJ assessed plaintiff's hearing testimony and discredited it to the extent the testimony conflicted with the ALJ's RFC assessment.  (AR 16, 19, 21.)  After describing the evidence of plaintiff's continually "mild" back diagnoses and "5/5" (normal) extremity exams and properly discounting Dr. Lu's opinion, the ALJ proceeded to discount plaintiff's testimony regarding the extent of his symptoms.  (AR 21.)  Plaintiff argues that the ALJ gave improper and insufficient reasons for discounting plaintiff's testimony.  (Pl.'s Mot. for Summ. J. at 16-18.)

At the hearing, plaintiff testified that "I have pain in the whole body from the head to the toes."  (AR 279.)  He described his pain as in his "shoulder, upper back, lower back, hip, knees, and to the, sometimes ankle, ankle."  (AR 280.)  He confirmed that he has had these pains "all" his life, including the times he was working.  (AR 281.)  Plaintiff stated that during his days, "most time[s] I just lay on the floor."  (AR 286.)  Plaintiff sometimes spends his days sitting on a "hardwood chair" or wood "bench."  (AR 287.)

Plaintiff described his daily activities as sometimes involving a "little bit" of cleaning, "some" vacuuming of one or two rooms at a time, a task he stops because it is "too noisy."[14]  (AR 285.)  He "sometimes" puts away bags of groceries.  (AR 288.)  Plaintiff also

---

[14]   Interestingly, plaintiff did not state that he stopped vacuuming due to back pain from bending over to vacuum. (AR 285.)  Because the court's review is limited to the grounds stated in the ALJ's decision, however, see Tommasetti, 533 F.3d at 1039 n.2, the undersigned did not consider

21

testified that he takes walks, sometimes walking "through the shopping center." (AR 289.)
Plaintiff claims he can walk only "a few" blocks. (Id.) He testified that he drives a couple days a week. (AR 290.)

Plaintiff testified that he can lift "20 pounds," such as his family's garbage bags, but afterwards his back feels like "a bomb coming." (AR 288.) He is able to lift the garbage bags but not carry them. (AR 288.) He testified that he has problems reaching and bending due to pain. (Id.)

The medical evidence also reflects that plaintiff has represented to his physicians that he "does the yard work for the house," "likes to go fishing," and "takes walks around the house." (AR 205, Psych. Eval. of Jan. 7, 2007.)

In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

---

this testimony in analyzing the ALJ's credibility determination.

conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

parties concerning the nature, severity, and effect of the symptoms of which [claimant]

complains." Thomas, 278 F.3d at 958-59 (modification in original) (quoting Light v. Soc. Sec.

Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d at 680 ("In determining

credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as

considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.").

If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may

not engage in second-guessing." Thomas, 278 F.3d at 959.

Here, the ALJ properly supported her adverse credibility determination as to

plaintiff.  In particular, the ALJ noted a "lack of ongoing and significant objective clinical

findings" supporting plaintiff's complaints of "disabling body pain" and pain in plaintiff's back,

neck, and upper and lower extremities.  (AR 19.)  The ALJ noted that there is "minimal medical

evidence" to support plaintiff's allegation that he could not sit or stand for any length of time due

to body pain.  (AR 19.)  The ALJ also found that the medical records do not show evidence of

"muscle wasting, deformity, or neurological deficits," or evidence of "any ongoing or significant

motor deficits or sensory findings," or evidence that plaintiff's pain was so severe as to require

"diagnostic testing or referral to a specialist or pain clinic."[15]  (AR 19.)  A lack of supporting

clinical findings can be a proper basis for an adverse credibility determination where a plaintiff

complains of pain.  See Burch, 400 F.3d at 681 (claimant's back pain complaints not credible

where "x-rays show only mild degenerative disc disease at L5-S1, and mild dextroscoliosis,"

because "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain

testimony, it is a factor that the ALJ can consider in his credibility analysis."); see Osenbrock v.

---

[15]  While plaintiff argues that the ALJ did not state "what further treatment" plaintiff should have sought (Pl.'s Mot. for Summ. J. at 17), the ALJ specifically described referral to a pain clinic, injections, and physical therapy as further treatment.  (AR 19.)  While plaintiff implies that he did not seek further treatment due to economic constrictions (Pl.'s Mot. for Summ. J. at 16-17), there is no record of plaintiff's physician declining to prescribe further treatment due to plaintiff's inability to pay for it.

1    <u>Apfel</u>, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (ALJ properly discounted plaintiff's credibility

2    regarding pain because "there is no evidence of disuse muscle atrophy" because of pain, and

3    because "neurological and orthopedic evaluations revealed very little evidence of any significant

4    disabling abnormality of the plaintiff's upper or lower extremities or spine"); <u>Meanel v. Apfel</u>,

5    172 F.3d 1111, 1114 (9th Cir. 1999) (although claimant testified she experienced "constant pain"

6    causing her to lie down all day and precluding her "from performing virtually any type of work,"

7    the ALJ discounted claimant's credibility in part because claimant "did not exhibit muscular

8    atrophy or any other physical signs of an inactive, totally incapacitated individual").

9           Further, while plaintiff testified that his daily activities were extremely limited,

10   the ALJ discussed plaintiff's testimony about his daily activities and found that these activities

11   "do not support the degree of pain or mental limitations" plaintiff alleges.  (AR 21 (plaintiff has

12   "reported activities including household chores, caring for his personal needs, folding clothes,

13   and doing yard work . . . he has a valid driver's license and drives . . . he likes to go fishing . . .

14   [t]hese activities do not support the degree of pain . . . alleged by the claimant.").)  Given these

15   and the other activities to which plaintiff testified, the ALJ properly supported her decision to

16   discredit plaintiff's claims of debilitating pain and days spent lying on hard surfaces due to

17   pain.[16]  Examination of plaintiff's reported daily activities along with the medical evidence of

18   record can support an adverse credibility determination.  <u>See</u> <u>Thomas</u>, 278 F.3d at 958-59.

19          The ALJ also noted that plaintiff "has not sought intense, ongoing treatment to

20   help reduce his symptoms."  (AR 21.)  The ALJ found that there was no medical evidence that

21   ──────────────

22   [16] While plaintiff argues that the ALJ failed to make "specific findings" that plaintiff's daily
     activities "transfer" to particular work activities (Pl.'s Mot. for Summ. J. at 17 (citing <u>Orn</u>, 495 F.3d

23   at 639)), plaintiff overlooks the fact that the ALJ at least partially based her adverse credibility
     determination on the contradictions and inconsistencies in plaintiff's representations — not on a
     finding that certain activities by plaintiff necessarily "transfer" to certain work settings. <u>See</u> <u>Thomas</u>,

24   278 F.3d at 958-59 (adverse credibility determination may be based upon "inconsistencies" either
     in the plaintiff's testimony or between his testimony and his conduct); <u>see</u> <u>Orn</u>, 495 F.3d at 639

25   (adverse credibility determinations can be supported where the activities were "transferable" to a
     work setting *or* where a plaintiff's testimony regarding his activities "contradict[s] his other

26   testimony.").

plaintiff's pain was so severe as to require "diagnostic testing or referral to a specialist or pain clinic." (AR 19.) The ALJ also properly noted that plaintiff had been treated "conservatively" for pain, and there is "no indication that surgery has been suggested." (AR 19.) A conservative treatment plan is a proper basis for an adverse credibility determination. See Tommasetti, 533 F.3d at 1041 (noting that favorable response to a conservative treatment plan is a permissible basis for discounting testimony of all-disabling pain); Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment" (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995)); Meanel, 172 F.3d at 1114 (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"); Burch, 400 F.3d at 681 (ALJ properly discredited claimant's pain testimony for lack of consistent treatment, in that she "had not had any treatment for her back for about three or four months" including physical therapy, chiropractic services, a home exercise program or the suggestion of surgery, which showed that her pain was "not severe enough to motivate [her] to seek [these forms of] treatment"); see Osenbrock, 240 F.3d at 1166 (discrediting plaintiff's pain testimony in part because "claimant has not participated in any significant pain regimen or therapy program").

Given the foregoing, it cannot be said that the ALJ failed to support the adverse credibility determination as to plaintiff.

3. ***Conclusion***

As described above, an ALJ may deviate from a prior ALJ's RFC assessment where "new and material evidence" supports such a deviation. See Chavez, 844 F.2d at 693-94; Stubbs-Danielson, 539 F.3d at 1172-73; Ellis, 2011 WL 5877490 at *5-9; AR 97–4(9). Here, after detailing the medical evidence arising since the First Decision, which revealed some back rigidity (AR 160, 162) yet continually only "mild" back conditions and "5/5" (normal) exams (AR 161-62, 237, 252-53) with minimal functional limitations (AR 197-201), *and* after

25

1    specifically discounting plaintiff's testimony regarding his symptoms of totally debilitating pain

2    (AR 19-21, 279-80, 286) and Dr. Lu's opinion that plaintiff has a total inability to work (AR

3    173), the ALJ concluded that "claimant is not limited by incapacitating pain" and therefore can

4    perform "medium exertion."  (AR 16, 21.)  The ALJ's conclusion that plaintiff's "mild" physical

5    conditions and minimal functional limitations permit plaintiff to perform "medium" work (AR

6    16) rather than "light" work (AR 314) was thus properly based on new medical evidence,

7    rejection of Dr. Lu's opinion, and discounting plaintiff's testimony.  Where evidence "is

8    susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

9    upheld." Burch, 400 F.3d at 679; Flaten, 44 F.3d at 1457 ("If the evidence can reasonably

10   support either affirming or reversing the [Commissioner's] conclusion, the court may not

11   substitute its judgment for that of the [ALJ]") (citing cases).

12          This is not a case where the ALJ ignored a previous final agency decision or failed

13   to discuss evidence specifically arising since that prior decision.  See Chavez, 844 F.2d at 693-

14   94.  Here, the ALJ identified "new and material" evidence, namely, medical treatment notes and

15   opinions post-dating the First Decision, as well as evidence supporting an adverse credibility

16   determination in regards to plaintiff's testimony of his symptoms and pain.  See Stubbs-

17   Danielson, 539 F.3d at 1172-73 (where "[t]he entirety of the medical evaluations presented with

18   respect to the [claimant's] present application were conducted *after* [claimant's] initial disability

19   determination[,] [t]hese evaluations *necessarily* presented new and material information not

20   presented to the first ALJ") (applying Chavez) (emphasis added).  The above-described evidence

21   is new, material, and specifically pertains to plaintiff's back conditions and the symptoms and

22   functional limitations arising therefrom.  See AR 97–4(9); Ellis, 2011 WL 5877490 at *5-9.  It

23   cannot be said that the ALJ simply ignored the First Decision insofar as it addressed these issues;

24   instead the ALJ weighed the evidence and made adjustments to the RFC based on the new

25   evidence.  See Chavez, 844 F.2d at 694; Ellis, 2011 WL 5877490 at *5-9.

26          In sum, the First Decision determined that plaintiff had a "light" work limitation,

1    Dr. Selcon more recently opined that plaintiff had "no" functional limitations, and the ALJ struck

2    a balance between these conclusions and weighed new medical and testimonial evidence before

3    ultimately finding plaintiff to have a "medium" work limitation.  Accordingly, for all the

4    foregoing reasons, substantial evidence supports the ALJ's determination that plaintiff's physical

5    condition improved since the First Decision such that plaintiff is capable of performing

6    "medium" work.

7           C.      The Fact That Plaintiff Can Identify Some Evidence Suggesting His Condition
                    Worsened Does Not Show The ALJ's Contrary Finding To Be Unsupported By
8                   Substantial Evidence

9                   Plaintiff identifies some evidence in the record tending to suggest plaintiff's

10   physical condition worsened since the First Decision.  (Pl.'s Mot. for Summ. J. at 21-22

11   (highlighting Dr. Lu's treatment notes reflecting pain medications and plaintiff's complaints of

12   pain, as well as plaintiff's hearing testimony regarding his limited mobility).)  Plaintiff argues

13   that the First Decision "noted spinal x-rays from March 2001 which were 'entirely within normal

14   limits'" and stated that the record "did not contain any evidence of significant degenerative spinal

15   pathology," (Pl.'s Mot. for Summ. J. at 14 (citing AR 313)), whereas the Second Decision

16   "referenced various x-rays which did in fact show such degenerative changes" as well as

17   plaintiff's continued treatment with pain and osteoporosis medications.  (Id. (citing AR 15).)

18   Plaintiff suggests an unspecified "x-ray from September 2007" and plaintiff's continued

19   "treatment with the pain medication Flexeril and the osteoporosis medication Celebrex,"

20   sufficiently shows "degenerative changes" in plaintiff's back impairments.  (Pl.'s Mot. for

21   Summ. J. at 14.)

22                  While plaintiff's assertions are creative, they are not well-taken.  First, plaintiff's

23   reference to "x-rays which did in fact show . . . degenerative changes" (id. (citing AR 15))

24   appears to be a reference to a single set of x-rays showing "*mild* dextroscoliosis" in September

25   2007.  (AR 15 (emphasis added) (citing AR 161 (x-ray dated Sept. 11, 2007).)  Moreover, the

26   First and Second Decisions *both* describe evidence of plaintiff's "normal" test results and/or

27

"mild" back conditions, as well as evidence of plaintiff's use of pain and osteoporosis

medications — *consistencies* in both decisions failing to confirm a *deterioration* in plaintiff's

condition.  (Compare AR 15 (citing AR 161, an x-ray dated Sept. 11, 2007 noting "mild"

dextroscoliosis); AR 15 (citing AR 197-201, an exam summary noting gait within "normal

limits" and "normal" range of motion in upper and lower extremities); AR 20 (citing AR 160,

noting plaintiff's continuing Flexeril medication) with AR 313-14 (describing x-rays from 2001

that were "entirely within normal limits" and plaintiff's "medication refills [for] his lower back

pain").)  Aside from Dr. Lu's opinion, which the ALJ properly discounted in the Second

Decision as described above, both decisions reflect plaintiff's mild back conditions and normal

test results.

         In any event, as discussed above, the ALJ determined that plaintiff's back

conditions had improved since the First Decision and discussed specific evidence supporting that

finding.  Plaintiff's attempt to frame the evidence as suggesting a deterioration in plaintiff's back

condition does not show the ALJ's contrary conclusions to lack the support of substantial

evidence in the record.  Again, where evidence "is susceptible to more than one rational

interpretation, it is the ALJ's conclusion that must be upheld."  Burch, 400 F.3d at 679; Flaten,

44 F.3d at 1457.  Accordingly, plaintiff has not shown that the ALJ erred in determining that

plaintiff's condition improved since the First Decision.[17]

IV.    CONCLUSION

         For the foregoing reasons, IT IS HEREBY ORDERED that:

         1.      Plaintiff's motion for summary judgment (Pl.'s Mot. for Summ. J., Dkt.

No. 15) is denied;

---

[17]   Because the undersigned finds that ALJ did not err in assessing the functional limitations arising from plaintiff's physical condition, the ALJ properly ceased the analysis at step four upon finding plaintiff capable of performing his past relevant work as a janitor.  (AR 22.)  Plaintiff has challenged the ALJ's RFC determination but has not argued in the alternative that, assuming the ALJ's RFC assessment to be correct, such RFC assessment is not conducive to plaintiff's performing his past relevant work. Accordingly, the undersigned's analysis stops here.

1          2.     Defendant's cross-motion for summary judgment (Def.'s Opp'n & Cross-

2   Motion for Summ. J., Dkt. No. 16) is granted; and

3          3.     The Clerk of Court is directed to enter judgment in the Commissioner's

4   favor.

5          IT IS SO ORDERED.

6   DATED:  March 12, 2012

7

8                                              _____

9                                              KENDALL J. NEWMAN
                                               UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26